IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHAD LYLE WILLIAMSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | CASE NO. 1:20-cv-728-JTA<br>(WO) |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), the claimant, Chad Lyle Williamson ("Williamson"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Williamson's claim for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the exercise of dispositive jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 9, 10.)

After careful scrutiny of the record and the parties' briefs, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

1

## I.     PROCEDURAL HISTORY AND FACTS

Williamson was 33 years old at the time of his alleged disability onset date of January 1, 2017. (R. 21, 27.)[2] He attended high school through the tenth grade. (R. 37-38.) His work history consists of employment as a glass installer, conveyor maintenance mechanic, inventory control clerk, antenna satellite installer, groundskeeper, auto parts delivery driver, and security person. (R. 63.) Williamson sought a disability determination due to type II diabetes, neuropathy, a herniated disc in his lower back, a broken collar bone in his right arm with limited range of motion, vision problems, hypertension, and heat exhaustion. (R. 43, 68, 185.)

On June 13, 2018, Williamson protectively filed for a period of disability and DIB under Title II (42 U.S.C. §§ 401, *et seq*.), and filed an application for SSI under Title XVI (42 U.S.C. §§ 1389, *et seq*.). (R. 68, 78-88, 159-63.) These claims were initially denied on November 27, 2018. (R. 93.) Williamson requested an administrative hearing on January 2, 2019. (R. 102.) The hearing was held in person in Mobile, Alabama, on January 29, 2020. (R. 33-66.) The Administrative Law Judge ("ALJ") returned an unfavorable decision on February 12, 2020. (R. 16–28.) Williamson sought review by the Appeal Council and it denied his request. (R. 1–6) Thus, the hearing decision became the final decision of the Commissioner.[3]

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 22.)

[3] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

On September 11, 2020, Williamson filed the instant action seeking review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 16, 21.) Hence, this matter is ripe for review.

## II.     STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec. Admin.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Dyer*, 395 F.3d at 1210; *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019). However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.  STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB and SSI must prove that he is disabled.[4]  *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920.  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  The evaluation is made at the hearing conducted by the ALJ.  *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).  First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial gainful activity" is work activity

---

[4] Although DIB and SSI are separate programs, the standards for determining disability are identical.  *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 744 (11th Cir. 2012).

that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number

of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV. ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Williamson met the insured status requirements of the Social Security Act through March 31, 2019. (R. 21.) The ALJ also found that Williamson had not engaged in substantial gainful activity since January 1, 2017, the alleged onset date. (*Id.*) The ALJ found Williamson had severe impairments of diabetes mellitus with neuropathy, a back disorder, and history of right clavicle fracture. (R. 22.) Nevertheless, the ALJ concluded that Williamson's severe impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*)

After consideration of the entire record, the ALJ determined that Williamson retains the RFC to perform sedentary work[5] as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except Williamson "can occasionally climb ramps and stair sand [sic] occasionally balance, stoop, kneel, crouch and crawl." (R. 23.) Additionally, the ALJ found that Williamson "can frequently reach overhead with the right upper extremity." (*Id.*) The ALJ found the following workplace limitations applicable to Williamson: (1)

---

[5] Title 20 of the Code of Federal Regulations defines sedentary work as:

> [I]nvolv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

"He is precluded from climbing ladders, ropes or scaffolds;" and (2) "He should never be exposed to unprotected heights or moving mechanical parts." (*Id.*) In accordance with this RFC, the ALJ concluded Williamson is unable to perform any past relevant work. (R. 26.)

After considering Williamson's age, education, work experience, and RFC, the ALJ concluded that jobs exist in significant numbers in the national economy that Williamson can perform. (R. 27.) The ALJ further concluded that Williamson had not been under a disability from January 1, 2017, through February 12, 2020, the date of the hearing decision. (R. 28.) The ALJ determined that based on the application for a period of disability and DIB filed on June 13, 2018, Williamson is not disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id.*) The ALJ further determined that based on the application for SSI filed on June 13, 2018, Williamson is not disabled under section 1614(a)(3)(A) of the Social Security Act. (*Id.*)

## V.   DISCUSSION

Williamson raises two issues on appeal. First, Williamson argues the ALJ's step three analysis is not supported by substantial evidence. (Doc. No. 16 at 4.) Second, Williamson contends the ALJ erroneously disregarded the opinion of Rodney Kerns, M.D. ("Dr. Kerns"). (*Id.* at 4, 8.) The Court addresses each of Williamson's arguments below.

A.  Medical Listing 1.04

Williamson claims the ALJ erred by finding that no evidence supported the conclusion that his spinal impairment met or medically equaled Listing 1.04 regarding disorders of the spine. (*Id.* at 4.) Specifically, Williamson claims the ALJ ignored evidence that his impairments met or medically equal Listing 1.04A based on the records from his

7

physical exam conducted by consultative examiner, Sam R. Banner, D.O. ("Dr. Banner"). (*Id.* at 6.) Williamson argues the ALJ conducted only a perfunctory analysis of Dr. Banner's examination, relied on a boilerplate paragraph to dispense with his spine disorder, failed to reference any of the evidence in question, and made a finding that is contradicted by the evidence. (*Id.* at 4, 7, 8.)

To buttress his argument, Williamson points to an unreported decision of this Court remanding an ALJ's unfavorable decision where the ALJ found "no evidence" that the claimant's impairment met or medically equaled the relevant medical listing. (*Id.* at 7–8); *see Patterson v. Saul*, No. 1:19-cv-206-SRW, 2020 WL 365569 (M.D. Ala. Jan. 22, 2020). In *Patterson*, the ALJ denied the claimant disabled status on the basis of step three while noting that the claimant had demonstrated, "no evidence of nerve root compression." *Patterson*, 2020 WL 365569, at *4. Yet, the evidence in the record indicated that the claimant suffered from diagnosed radiculopathy, which involves "irritation of or injury to a nerve root." *Id.* (quoting *Cooper v. Comm'r of Soc. Sec.*, No. 6:18-cv-1352, Orl-37LRH, 2019 WL 3097541, at *5 n.7 (M.D. Fla. June 28, 2019)). Because the claimant had a diagnosed disorder that entailed nerve root compression, this Court found the ALJ committed reversable error when it declared that the record presented "no evidence of nerve root compression." *Id.* at *3.

The Commissioner responds that the ALJ's characterization of the lack of evidence supporting Williamson's impairment meeting or medically equaling Listing 1.04A was not an unsupported blanket statement as in *Patterson*. (Doc. No. 21 at 8.) The Commissioner highlights that the ALJ not only found that Williamson's impairment was not a nerve root

compression but also that any such nerve root compression was not associated with its required consequential symptoms in Listing 1.04A. Thus, the ALJ's denial was not a blanket rejection without any engagement with the record. (*Id.*)

Likewise, the Commissioner contests Williamson's assertion that Dr. Banner's records require this Court to reverse and remand the ALJ's decision. (*Id.* at 8–10.) The Commissioner postulates that while Dr. Banner pointed to some abnormal findings, those indications do not prove Williamson's impairment meets or medically equals Listing 1.04A. The Commissioner's reasoning is twofold. First, the Commissioner claims Williamson's assertion that Dr. Banner's single examination meets step three's requirements is misguided. Second, the Commissioner maintains that Dr. Banner's records do not satisfy that Williamson's impairment meets or medically equals Listing 1.04A. (*Id.*)

> In regard to Listing 1.04, the ALJ stated:
>
> The undersigned evaluated [Williamson's] degenerative disc disease of the lumbar spine in accordance with Medical Listing 1.04. [Williamson's] impairments are not characterized by nerve root compression accompanied by sensory or reflex loss, positive straight-leg raising tests, spinal arachnoiditis, or lumbar spinal stenosis resulting in the inability to ambulate effectively, and thus do not meet Medical Listing 1.04[.]

(R. 22.) The ALJ ultimately concluded that "[n]o listing was met or equaled when all of [Williamson's] severe impairments were considered, both individually and/or in combination[ ]" and "[n]o examining or treating source nor any medical expert reported that [Williamson] has an impairment that meets or medically equals a medical impairment per the listings." (*Id.*)

Here, contrary to Williamson's suggestion, and distinguishably from *Patterson*, the ALJ did not find that "no evidence" supported a finding of an impairment that met or medically equaled Listing 1.04. The ALJ stated that Williamson's impairment was "*not characterized by* nerve root compression accompanied by sensory or reflex loss, positive straight-leg raising tests, spinal arachnoiditis, or lumbar spinal stenosis resulting in the inability to ambulate effectively, and thus do not meet Medical Listing 1.04[.]" (R. 22) (emphasis added). The ALJ's statement suggests that he considered the relevant evidence, including Dr. Banner's records, and found that those records did not support a finding that Williamson's impairment met or medically equaled Listing 1.04. Rather than indicating that the ALJ found no evidence in Williamson's favor, the ALJ's statement indicates that the ALJ found the evidence that did exist and merely considered it to be insufficient. This distinction is important.

As to Dr. Banner, the ALJ summarized the records from Dr. Banner, including Williamson's subjective statements to him, his notes and his opinion. (R. 24-25.) The ALJ noted that Williamson reported to Dr. Banner he was diagnosed with diabetes and then peripheral neuropathy, he complained of chronic low back pain, he had a history of a right clavicle transverse fracture, and he had very poor vision. (*Id*.) The ALJ also noted Dr. Banner's examination of Williamson showed a "decreased range of motion on the right shoulder and lumbar spine[,]" "reduced (4+/5) strength in the upper extremities and (4/5) strength in the lower extremities[,]" and normal grip strength bilaterally "(5/5)." (R. 24, 25.) The ALJ stated Dr. Banner's notes that Williamson "demonstrated pain or difficulty getting on and off the exam table[,]" "[h]is gait demonstrated slow cautious steps[ ]" and

10

he "had altered sensation in the bilateral lower extremities." (*Id.*) The ALJ further stated Dr. Banner's opinion that Williamson was capable of squatting "halfway down[,]" his "[t]andem, heel to toe walking was performed satisfactorily[,]" his "seated straight leg raising was negative in both legs[,]" his "[m]uscle tone was normal[ ]" and "[t]here was no atrophy in any muscle group." (R. 25.) The ALJ concluded his summary by stating that "Dr. Banner diagnoses included: history of severe low back trauma post op, diabetes mellitus type II with peripheral neuropathy, and history right clavicle fracture (transverse) . . . ." (*Id.*)

To meet Listing 1.04A, as Williamson has pointed out, he must establish "nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (demonstrated by . . . atrophy with associated muscle weakness or simply muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising (sitting and supine)." (Doc. No. 16 at 6 (citing 20 C.F.R. Part 404, Subpart P, Appendix I, Listing 1.04A)).[6] While this

---

[6] Listing 1.04 provides as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

Court need not and does not reweigh the evidence, Dr. Banner's records do not meet this standard.  Dr. Banner's notes show that Williamson experiences certain symptoms that likely are attributable to a back injury or back pain.  (R. 376–81.)  However, Dr. Banner's records do not suggest that Williamson had positive straight-leg raising while supine.  (R. 380.)  This failure alone demonstrates the ALJ's decision is based on substantial evidence.  Nevertheless, Dr. Banner's records also explicitly state that Williamson was not experiencing atrophy and had a normal muscle tone.  (*Id.*)  Accordingly, the ALJ properly considered and evaluated the medical evidence, including Dr. Banner's records, and the Court finds substantial evidence to support the ALJ's decision.

Further, Williamson is factually incorrect in his assertion that the ALJ did not discuss Dr. Banner's findings.  Albeit the ALJ did not discuss Dr. Banner's findings in his analysis of Listing 1.04 (R. 22), but the ALJ discussed this evidence elsewhere in the opinion (R. 24).  This Court must review the ALJ's decision as a whole in determining whether the decision is based on substantial evidence.  *See Putman v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 929, 933 (11th Cir. 2017) (rejecting claimant's argument and noting "*a review of the ALJ's decision as a whole* shows that these records were just one of many reasons the ALJ offered for giving [physician's] assessment less than substantial weight") (emphasis added); *Jackson v. Kijakazi*, No. 1:20-CV-00039-KFP, 2021 WL 4472597, at *7 (M.D. Ala. Sept. 29, 2021) ("As is often said, the district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; *it must simply review the ALJ's decision as a whole* and determine if the decision is

reasonable and supported by substantial evidence.") (emphasis added). Consequently, reviewing the ALJ's decision as a whole, the Court finds no reversible error.

B. Opinion of Dr. Kern

Williamson next claims the ALJ erred by disregarding the medical opinion of Dr. Kerns. (Doc. No. 16 at 8–14.) In a "Medical statement regarding Diabetes[,]" Dr. Kerns opined that Williamson suffers from "[t]ype II diabetes" and has "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." (R. 405.) Moreover, in a Clinical Assessment of Pain ("CAP"), Dr. Kerns postulated that Williamson endures pain that is "distracting to adequate performance of daily activities or work[,]" that physical activity would cause an "increase of pain to such an extent that bed rest and/or medication is necessary[]" and that "drug side effects can be expected to be severe and limit effectiveness due to distraction, inattention, drowsiness, etc." (R. 403.) Dr. Kerns further proclaimed in a Physical Capacities Evaluation ("PCE") that Williams can lift or carry 20 pounds or less, occasionally, and 10 pounds or less, frequently; can sit for two hours and stand or walk for two hours during an 8-hour work day; needs to be absent from work more than four days a month; and had some postural, reaching and environmental limitations. (R. 404.)

The ALJ summarized Dr. Kerns' multiple visits with Williamson in 2018 and 2019. (R. 24-26.) The Court finds no need to repeat the summaries here. As to the PCE, the ALJ noted Dr. Kerns' opinion, stating:

> [Williamson] can lift and carry up to 20 pounds occasionally and 10 pounds frequently. During an eight-hour workday, [Williamson] can sit for 30 minutes at one time for up to two hours and can stand for 15 minutes at one time and stand or walk for two hours total. He could never climb, balance, bend, stoop or work around hazardous machinery. [Williamson] can rarely reach and operate motor vehicles and occasionally push/pull with arms and legs, perform gross manipulation or be exposed to environmental problems; he can frequently perform fine manipulation . . . [Williamson] would miss four or more days of work per month[.]

(R. 26.)  The ALJ found this opinion was not persuasive because it was unsupported and inconsistent with the other relevant medical evidence.  Specifically, the ALJ stated:

> This opinion is far more restrictive than the treatment records support. Dr. Kerns' records show normal physical exam findings and do not support the severe restrictions on sitting and postural limitations indicated in this opinion, for example. His records also indicate some diabetic medication compliance issues. The opinion is also generally inconsistent with [Williamson's] own statements reflecting that he is able to prepare meals, perform household chores and drive . . . Dr. Kerns's opinion is not well-supported as he indicated [Williamson's] diabetes and neuropathy were the reasons for the limitations. However, these conditions do not support the severe sitting limitations or number of absences reported, which seem to be based off of subjective complaints. Thus, this opinion is not persuasive.

(*Id.*)  Likewise, the ALJ found the CAP unpersuasive, stating:

> This opinion is not a functional assessment of [Williamson's] abilities despite his impairments.  Moreover, pain is a subjective symptom and the opinion seems to be based on [Williamson's] statements rather than objective clinical findings.  For example, the medical imaging in the file show none or only minimal findings and the physical exams are mild with only mild conservative measure recommended.  Moreover, [Williamson] has not complained of medication side effects to providers, including Dr. Kerns.  Thus, this opinion is not persuasive.

(*Id.*)  The ALJ explained, "[t]he [RFC] to sedentary work with postural, reaching and environmental limitations accommodates [Williamson's] diabetes with neuropathy, his back disorder and history of fractured clavicle."  (R. 25.)  He further explained:

14

> The treatment records show some noncompliance with diabetes medication but physical exam findings were generally mild to normal. [Williamson] noted in his function report that he could do chores, fix meals, drive, shop weekly for an hour, lift 10 pounds, stand and walk for two hours, sit for four hours, and he worked performing more exertionally demanding occupations after his alleged onset date. The limitation to sedentary work readily accommodates any limitations [Williamson] has from his back, diabetes, neuropathy, or history of right clavicle fracture.

(*Id.*)

Williamson asserts, contrary to the ALJ's finding, that Dr. Kerns' opinion was supported and consistent with the other medical evidence. (Doc. No. 16 at 10–11.) Specifically, Williamson argues that the ALJ erred by not considering Dr. Kerns' statement that his limitations were due not only to his diabetes but also "chronic low back pain with history of lumbar spine surgery." (*Id.* at 10.) Likewise, Williamson contends the ALJ misconstrued Dr. Kerns' opinion as relating only to diabetes rather than low back pain because the ALJ held that a diagnosis of diabetes would not support prolonged sitting and repeated work absence limitations. (*Id.*)

The Commissioner responds that Williamson confuses the ALJ's standard by relying on cases applying the old regulations regarding crediting medical evidence. Additionally, the Commissioner replies that the ALJ adequately supported his decision with a detailed analysis of the record and relevant medical evidence, and the decision should not be reversed because it is consistent with substantial evidence. (Doc. No. 21 at 12–14.)

The regulations governing claims filed on or after March 27, 2017, abandon the requirement that the ALJ must give "good reasons" for the weight given medical opinions

15

and prior administrative medical findings. *See Nix v. Saul*, Case No. 4:20-cv-00790-RDP, 2021 WL 3089309, at * 6 (N.D. Ala. July 22, 2021). The regulations now direct the ALJ to evaluate the persuasiveness of each medical source using the following five factors: (1) supportability, (2) consistency, (3) length of relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 416.920c(c). The ALJ must explain in his decision how he considered the factors of supportability[7] and consistency[8] in his determination of overall persuasiveness of each source. *Nix*, 2021 WL 3089309, at *6; 20 C.F.R. § 416.920c(b)(2) ("[S]upportability . . . and consistency . . . are [t]he most important factors we consider . . . [t]herefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."). The persuasiveness analysis should turn on whether "the medical source's opinion is (1) supported by the source's own records and (2) consistent with other evidence of record." *Dease v. Kijakazi*, No. 2:20-CV-394-KFP, 2022 WL 428173, at *3 (M.D. Ala. Feb. 11, 2022). The ALJ is not required to explain how he considered the remaining factors unless he finds two or more medical opinions are equally well-supported and consistent with the record but are not exactly the

---

[7] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

[8] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

same. *Gogel v. Comm'r Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *6 (M.D. Fla. Sept. 20, 2021).

The Court remains mindful that it is not tasked with reweighing the evidence presented to the ALJ. Even if this Court may have reached a different decision, if the ALJ's decision was supported by substantial evidence, it will not be disturbed. *See Dyer*, 395 F.3d at 1210. Here, the ALJ's decision to disregard Dr. Kerns' opinion is supported by substantial evidence. Williamson asserts that the ALJ wrongfully ignored Dr. Kerns' postulation that his limitations resulted from his diabetes and his chronic low back pain, rather than diabetes alone. This argument is misguided.

While Williamson is correct that the ALJ did not expressly mention Dr. Kerns' inclusion of chronic back pain as a diagnosis, Williamson is incorrect in believing this demonstrates the ALJ erred by disregarding Dr. Kerns' opinion in its entirety. The ALJ noted multiple reasons for finding Dr. Kerns' opinion unpersuasive. The ALJ's justifications included previous physical exam findings suggesting Dr. Kerns' limitations claims were unsupported and inconsistent, Williamson's diabetic medication compliance issues, and Williamson's own statements that he can "prepare meals, perform household chores and drive." (R. 26.) Accordingly, for those reasons—not solely because the ALJ seemed to indicate that Dr. Kerns attributed the limitations to diabetes alone—the ALJ disregarded Dr. Kerns' opinion. Thus, Williamson's argument, even taken as true, does not prevail because the ALJ addressed the supportability and consistency of Dr. Kerns' opinion and there were other reasons to dismiss the opinion as outlined in the ALJ's decision. The ALJ did not err.

Because the ALJ conducted a thorough review of the medical evidence, followed the requirements for weighing medical proof, and reached a decision based on a detailed consideration of the medical evidence, this Court concludes that the ALJ's decision is supported by substantial evidence.

## VI.  CONCLUSION

After review of the administrative record, and considering Williamson's arguments, the Court finds the Commissioner's decision to deny him disability is supported by substantial evidence and accords with applicable law.  Accordingly, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 9th day of September, 2022.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE